UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHESTON J. ROBERTS,                              )
                                                )
                    Plaintiff,                  )
                                                )
          v.                                    )      No. 1:23-cv-00828-JRS-KMB
                                                )
STATE OF INDIANA,                               )
ERIC HOLCOMB,                                   )
DIEGO MORALES,                                  )
                                                )
                    Defendants.                 )

**Order on Motion to Dismiss**

This is a voting rights case. In Indiana, most counties elect their state court judges by popular vote; in Marion County, by contrast, where there are many "black and minority" voters, state court judges are appointed by the Governor from a shortlist provided by a judicial nominating committee—so Roberts, a "black Hoosier voter" from Marion County,[1] claims that he is "disenfranchised" compared to fellow Hoosiers from other counties. (Pl.'s Br. 1, ECF No. 51.) He brings claims under the Voting Rights Act, the First and Fourteenth Amendments of the U.S. Constitution, and the Indiana Constitution. (Am. Compl. 6–12, ECF No. 33.) Now before the Court is the State's Motion to Dismiss, (ECF No. 42), and Roberts' Motion for Oral Argument on that motion, (ECF No. 56).

---

[1] Roberts also purports to bring challenges to the St. Joseph and Lake County judicial selection processes, but he has no standing there, *United States v. Hays*, 515 U.S. 737, 745 (1995), and so the Court confines its discussion to Marion County. The analysis would be the same for St. Joseph and Lake Counties in any event.

I.    **Legal Standard**

"A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (quoting *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015)).  Rule 8(a) requires that the complaint contain a short and plain statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "To meet this standard, a plaintiff is not required to include 'detailed factual allegations,'" but the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Because the defendant must ultimately be *liable*, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).  That applies "without regard to whether [the claim] is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.*  But "[a] complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).

When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561,

2

564 (7th Cir. 2016).  Courts need not, however, accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II.   Discussion

Roberts' theory is not novel.  The Court has no occasion to discuss its facial plausibility because controlling Supreme Court and Seventh Circuit precedent dictate the outcome here.  No oral argument is warranted.  S.D. Ind. Local Rule 7-5 (Court may deny a request for oral argument "in its sole discretion").

### A. State Constitution

Indiana's sovereign immunity bars Roberts' state law claims against the State and its officials.  *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 603 (7th Cir. 2022), *cert. denied sub nom. Troogstad v. City of Chicago, Ill.*, 143 S. Ct. 734 (2023) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)).  (The State, but not its officials, might also be immune from the federal claims as well, but its argument is not well enough developed to say for sure; the Court thinks the State has given short shrift to *Ex parte Young*.  *See id.*)

State sovereign immunity, however odd it appears in principle, *see, e.g.*, Erwin Chemerinsky, *Against Sovereign Immunity*, 53 Stan. L. Rev. 1201 (2001), is beyond this Court's power to reexamine.  That leaves the federal claims under the Voting Rights Act and the U.S. Constitution.

B. Voting Rights Act

Section 2 of the Voting Rights Act prohibits state voting policies that "den[y]" or "abridge[]" a citizen's right to vote "on account of race." 52 U.S.C. § 10301(a). Its prohibition is violated if the "political processes leading to nomination or election in the State or political subdivision are not equally open to participation" by members of a given race or protected class. *Id.* § 10301(b). Marion County judges are appointed, not elected. Ind. Code §§ 33-33-49-13.1 (establishing "Marion County judicial selection committee"), 33-33-49-13.4 (providing for appointment by the Indiana governor of one judge from among three "most qualified candidates" recommended by the nominating committee). Roberts argues that because he cannot vote for his county judge, he and other minority voters in Marion County are deprived of voting rights that residents of other counties enjoy. (Am. Compl. 6, ECF No. 33.)

The Seventh Circuit faced a similar challenge in *Quinn v. Illinois*, 887 F.3d 322 (7th Cir. 2018). There, the plaintiff alleged that Chicago, by nominating a school board instead of electing one, as was the standard practice elsewhere in Illinois, deprived black and Latino citizens of their right to vote. *Id.* at 323. The Circuit rejected that theory, holding that "unless an office is elected, § 2 as a whole does not apply." *Id.* at 325. The court explained that "§ 2 governs the conduct of elections, [but] it does not guarantee that any given public office be filled by election rather than appointment, a civil service system, or some other means." *Id.* at 323. The court further observed that its holding comported with Supreme Court dicta and agreed

with other Circuits' precedent. *Id.* at 324 (citing *Chisom v. Roemer*, 501 U.S. 380, 401 (1991) and collecting Circuit cases).

That holding settles the question for this Court: if § 2 does not apply to appointed offices, then Roberts' challenge to Marion County's appointed judges cannot proceed under this section of the Voting Rights Act.

Roberts tries to escape that conclusion by pointing to a section of the *Quinn* court's alternate reasoning. After holding that § 2 did not apply to the Chicago appointment scheme, the court pointed out that, even if § 2 did apply, "Black and Latino citizens do not vote for the school board in Chicago, but neither does anyone else. Every member of the electorate is treated identically, which is what § 2 requires." *Id.* at 325. That observation is equally true here: Roberts does not get to vote for Marion County judges, but neither do any other Marion County residents.

But the *Quinn* court went on to mention that Chicago voters exercised their political influence by voting for the Mayor who appoints the school board, *id.*, and Roberts seizes on that observation. Here, he argues, the case is different, because the state Governor, not the city-county Mayor, appoints Marion County judges—so Marion County voters have their influence diluted by the rest of the state. (Pl.'s Br. 12, ECF No. 51.) That argument cannot disturb *Quinn*'s binding primary holding, that § 2 does not apply, even if it were true. And the Court does not think—on balance, and accounting for the uncertainty of all political processes—that it is.

The Governor's appointment is not unconstrained. The Governor selects from three candidates nominated by committee. Ind. Code § 33-33-49-13.4(a). All

candidates must be Marion County residents, § 33-33-49-6, and all members of the committee, except the chief judge and chief justice of the Court of Appeals and Supreme Court, must be Marion County residents, too, § 33-33-49-13.1.   The candidates are expected to "reflect the diversity and makeup of Marion County," § 33-33-49-13.4, and Marion County residents vote to retain or reject judges after their first term, § 33-33-49-13.3.  It is not for the Court to say whether this appointment scheme is "good government," *Quinn*, 887 F.3d at 324, but it can hardly be painted as a ploy to allow hinterland interference with Marion County affairs.

### C.  U.S. Constitution

Roberts' basic theory fares no better under the Constitution.  The *Quinn* court rejected the disenfranchisement arguments "repackaged" in Equal Protection.  *Id.* at 325.  It relied on *Sailors v. Board of Education*, 387 U.S. 105 (1967), and *Hearne v. Board of Education*, 185 F.3d 770 (7th Cir. 1999).  In *Sailors*, the Supreme Court held that "a State can appoint local officials or elect them or combine the elective and appointive systems " without offending the Equal Protection clause.  387 U.S. at 111.  In *Hearne*, the Circuit was faced with a challenge to a Chicago-specific school reform: the plaintiffs alleged that by singling out Chicago the Illinois legislature had discriminated against the minority populations concentrated there.  *Id.* at 776.  The court held that the law would only violate the Equal Protection clause if it showed "actual intent to discriminate on the basis of race"—that is, disparate treatment instead of disparate impact.  *Id.*  The court found that mere allegations of racial discrimination were not enough to raise the issue because population differences were

not "such a good proxy" to make the "ostensibly neutral classification" in the law suggestive of racial discrimination. *Id.*

This Court, as it must, follows *Quinn* and *Hearne.* There are non-discriminatory reasons to treat Marion County judicial selection differently from the rest of the state—like Chicago in Illinois, Indianapolis is a large city with different issues than those faced in rural counties. Marion County receives special legislative treatment on a whole host of issues. *See, e.g.*, Ind. Code §§ 36-3-1-0.3 ff. ("Government of Indianapolis and Marion County (Unigov)"). The judicial selection law is facially race-neutral. § 33-33-49-13.4. The racial makeup of the County compared to the State is not alone compelling. And Roberts does not make even bare allegations of racially discriminatory intent, much less surmount the "plausibility" threshold from *Twombly. Accord Hearne*, 185 F.3d at 776 ("The plaintiffs' saying this is so in their pleadings is not enough to allow them to survive a Rule 12(b)(6) motion.").

Finally, Roberts at one point invoked the First Amendment, (Am. Compl. 9, ECF No. 33), but he develops no argument on that point, and the Court, for its part, does not see a plausible way forward on that theory. *Mwangangi v. Nielsen*, 48 F.4th 816, 832 (7th Cir. 2022) (undeveloped arguments not to be considered). Perhaps the First Amendment reference came from *Common Cause Indiana v. Individual Members of the Indiana Election Comm'n*, 800 F.3d 913 (7th Cir. 2015), a case which Roberts thought controls, where the Seventh Circuit invalidated a partisan-balance requirement in the old selection process for Marion County judges. That case

concerned First Amendment rights to political association in an election context—but

there is no election at issue here, and *Quinn*, as discussed above, gives the rule.

### III.   Conclusion

Roberts' Motion for Oral Argument, (ECF No. 56), is **denied.**

Roberts has failed to state a claim on which relief can be granted, Fed. R. Civ. P.

12(b)(6), and so the State defendants are entitled to dismissal of the complaint.  The

Motion to Dismiss, (ECF No. 42), is **granted.**

That does not end the case.  Roberts may attempt to amend his complaint before

the whole action is dismissed.  *Runnion ex rel. Runnion v. Girl Scouts of Greater*

*Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).   Any attempt at

amendment, though, would have to fix the problems identified here.  So, new or

renewed state law claims are out—those would still be barred by Indiana's sovereign

immunity and dismissed as outside this Court's jurisdiction.  *McHugh v. Illinois Dep't*

*of Transportation*, 55 F.4th 529, 532 (7th Cir. 2022).  Likewise with Voting Rights Act

claims—*Quinn* is not going away, so those would be dismissed on the merits.  And

more allegations of disparate impact do no good.  *Hearne*, 185 F.3d at 776.  Really,

then, the only avenue for an amended complaint would be to allege new facts tending

to show actual discriminatory intent in the law.  That might be unrealistic to attempt,

but should Roberts choose to amend, he is given him **21 days from the date of this**

**Order** to do so.  If no amended complaint is filed within that period, the Court may

close the case and enter judgment dismissing this action without further notice.

**SO ORDERED.**

Date: 04/03/2024

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Nicholas F. Baker
Nick Baker Law LLC
nick@nickbakerlaw.com

James A. Barta
Office of the Indiana Attorney General
james.barta@atg.in.gov

Katelyn E. Doering
Office of IN Attorney General
katelyn.doering@atg.in.gov

Melinda Rebecca Holmes
INDIANA ATTORNEY GENERAL
melinda.holmes@atg.in.gov